**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | Chapter 11 |
| RENEWABLE ASSET MANAGEMENT | ) | |
| COMPANY, LLC, | ) | Case No. 16 B 37669 |
| | ) | |
| Debtor. | ) | Honorable Pamela S. Hollis |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| RENEWABLE ASSET MANAGEMENT | ) | |
| COMPANY, LLC, FMSI OF DELAWARE, | ) | |
| INC., FMSI CONSUMER CREDIT CORP., | ) | |
| THREE MARKETIERS, LLC, FMSI- | ) | Adversary Pro. No. 16-_____ |
| FINANCIAL RESOURCES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMCO HOLDINGS, LLC, | ) | |
| | | |
| Defendant. | | |

**VERIFIED ADVERSARY COMPLAINT TO AVOID FRAUDULENT TRANSFERS
PURSUANT TO 11 U.S.C. SECTIONS 548(a) AND 550, FOR BREACH OF
PROMISSORY NOTES, FOR TURNOVER OF ESTATE PROPERTY
<u>PURSUANT TO 11 U.S.C. SECTION 542, AND FOR PRELIMINARY INJUNCTION</u>**

Plaintiffs Renewable Asset Management Company, LLC, FMSI of Delaware, Inc., FMSI

Consumer Credit Corporation, Three Marketiers, LLC, FMSI-Financial Resources, LLC

(collectively, the "<u>Plaintiffs</u>"), by and through their undersigned attorneys, Lathrop & Gage LLP,

and for their Complaint against RAMCO Holdings, LLC ("<u>RAMCO Holdings</u>"), hereby state

and allege as follows:

## INTRODUCTION

1.      Pursuant to this adversary proceeding, the Plaintiffs seek the entry of a judgment against RAMCO Holdings (i) avoiding and recovering (pursuant to 11 U.S.C. §§ 548 and 550) the Transfers (as defined below), (ii) in the alternative, for breach of three Promissory Notes (as defined below), (iii) ordering RAMCO Holdings to turnover certain assets of the Plaintiffs, and (iv) for a preliminary injunction ordering RAMCO Holdings to turn such assets over to the Plaintiffs as well as control of the assets fraudulently transferred to RAMCO Holdings and enjoining RAMCO Holdings from selling, conveying or otherwise disposing of such assets.

## THE PARTIES

2.      Debtor and Plaintiff, Renewable Asset Management Company, LLC ("RAMCO"), is a Delaware limited liability company whose address is believed to be 119 S. Ellsworth Ave., Naperville, IL.

3.      Debtor and plaintiff, FMSI of Delaware, Inc. ("FMSI Delaware"), is a Delaware corporation whose address is believed to be 119 S. Ellsworth Ave., Naperville, IL.

4.      Debtor and plaintiff, FMSI Consumer Credit Corporation ("FMSI Consumer"), is an Illinois corporation whose address is believed to be 119 S. Ellsworth Ave., Naperville, IL.

5.      Debtor and plaintiff, Three Marketiers, LLC ("Three Marketiers"), is an Illinois limited liability company whose address is believed to be 119 S. Ellsworth Ave., Naperville, IL.

6.      Plaintiff, FMSI-Financial Resources, LLC ("FMSI-Financial") is an Illinois limited liability company whose address is believed to be 119 S. Ellsworth Ave., Naperville, IL. Collectively, FMSI Delaware, FMSI Consumer, Three Marketiers, and FMSI-Financial are referred to herein as the "FMSI Entities".

7.      Defendant, RAMCO Holdings, LLC is a Delaware limited liability company whose address is believed to be 119 S. Ellsworth Ave., Naperville, IL.

## JURISDICTION AND VENUE

8.      This adversary proceeding is brought pursuant to sections 542, 548(a), and 550 of the United States Bankruptcy Code, and Rules 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure.   Venue in this matter is proper under 28 U.S.C. §§ 1408 and 1409. Counts I, II, VI and VII are core proceedings over which the Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334.   Counts III and IV are non-core proceedings over which the Court has "related to" jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b).  Plaintiffs consent to this Court entering final orders or judgments with respect to all counts in this Complaint.

## BACKGROUND

**Overview of Plaintiffs and Related Entities**

9.      The Plaintiffs provide financial and non-financial services to small businesses and individuals.   The Plaintiffs' small business services primarily are directed toward construction contractors, suppliers and distributors and include, without limitation, term loan financing, lines of credit, receivables financing, equipment leasing, advertising and marketing.

10.     Through their DBA, SunLender, the Plaintiffs also market and sell loans and equipment leases, to individuals and contractors, intended to finance small scale, residential solar energy panel installations.

11.     The Plaintiffs have also solicited debt and equity investments from the general public.  In conjunction with the Plaintiffs' investor solicitation efforts, RAMCO prepared and distributed a document entitled "Executive Summary - $25 Million Offering Energy Efficiency

Investment Notes" (the "<u>Offering Document</u>").  A true and correct copy of the Offering Document is attached to this Complaint as <u>Exhibit A</u> and incorporated by this reference.

12.    On the Plaintiffs' organizational structure chart ("<u>Organizational Structure Chart</u>"), obtained from the Plaintiffs, Carol Delgado is listed as the sole owner of RAMCO and a fifty percent owner of each of the FMSI Entities.  A true and correct copy of the Organizational Structure Chart is attached to this Complaint as <u>Exhibit B</u> and incorporated by this reference.

**<u>The PrivateBank and Trust Company's Loans to the FMSI Entities and RAMCO</u>**

13.    On October 29, 2013, The PrivateBank and Trust Company (the "<u>Bank</u>") entered into that certain Business Loan and Security Agreement (the "<u>FMSI Loan Agreement</u>") with the FMSI Entities, which provided the FMSI Entities a revolving loan (the "<u>FMSI Loan</u>") of up to $10,000,000.00.  A true and correct copy of the FMSI Loan Agreement is attached hereto as <u>Exhibit C</u> and incorporated by this reference.

14.    In connection with the FMSI Loan, the FMSI Entities executed and delivered to the Bank that certain Revolving Note dated October 29, 2013 (the "<u>FMSI Revolving Note</u>").  A true and correct copy of the FMSI Revolving Note is attached hereto as <u>Exhibit D</u> and incorporated by this reference.

15.    To secure their obligations under the FMSI Loan Agreement, the FMSI Entities granted the Bank a security interest in and liens on substantially all of the FMSI Entities' tangible and intangible assets, including receivables.  Additionally, Section 9.4 of the FMSI Loan Agreement strictly prohibits the FMSI Entities from selling or assigning any receivables.

16.    As additional security for the obligations owed under the FMSI Loan Agreement, Carol Delgado executed and delivered a limited guaranty (the "<u>FMSI Delgado Guaranty</u>") to the

Bank on October 29, 2013.   Under the FMSI Delgado Guaranty, Carol Delgado agreed to

assume responsibility for all of the FMSI Entities' obligations under the FMSI Loan Agreement

up to $1,000,000.00 plus $35,000.00 of reasonable out-of-pocket expenses (including attorneys'

fees) incurred by the Bank in enforcing the FMSI Delgado Guaranty.   A true and correct copy

of the FMSI Delgado Guaranty is attached hereto as <u>Exhibit E</u> and incorporated by this

reference.

17.     The FMSI Loan Agreement, FMSI Revolving Note, and the FMSI Delgado

Guaranty are collectively referred to herein as the "<u>FMSI Loan Documents</u>."

18.     On December 19, 2014, the Bank entered into that certain Business Loan and

Security Agreement (the "<u>RAMCO Loan Agreement</u>") with RAMCO, which provided RAMCO

with a revolving loan (the "<u>RAMCO Loan</u>") of up to $10,000,000.00.   A true and correct copy

of the RAMCO Loan Agreement is attached hereto as <u>Exhibit F</u> and incorporated by this

reference.

19.     In connection with the RAMCO Loan, RAMCO executed and delivered to the

Bank that certain Revolving Note dated December 19, 2014 (the "<u>RAMCO Revolving Note</u>").

A true and correct copy of the Revolving Note is attached hereto as <u>Exhibit G</u> and incorporated

by this reference.

20.     To secure its obligations under the RAMCO Loan Agreement, RAMCO granted

the Bank a security interest in and liens on substantially all of RAMCO's tangible and

intangible assets, including receivables.   Additionally, Section 9.4 of the RAMCO Loan

Agreement strictly prohibits RAMCO from selling or assigning any receivables.

21.     As additional security for the obligations owed under the RAMCO Loan

Agreement, Carol Delgado executed and delivered a limited guaranty (the "<u>RAMCO Delgado</u>

Guaranty") to the Bank on October 29, 2016. Under the RAMCO Delgado Guaranty, Carol Delgado agreed to assume responsibility for all of RAMCO's obligations under the RAMCO Loan Agreement up to $1,000,000.00 plus reasonable out-of-pocket expenses (including attorneys' fees) incurred by the Bank in enforcing the RAMCO Delgado Guaranty. A true and correct copy of the RAMCO Delgado Guaranty is attached hereto as <u>Exhibit H</u> and incorporated by this reference.

22.    The RAMCO Loan Agreement, RAMCO Revolving Note, and the RAMCO Delgado Guaranty are collectively referred to herein as the "<u>RAMCO Loan Documents</u>."

23.    The FMSI Loan and the RAMCO Loan each matured on July 30, 2016.

24.    On August 1, 2016, the Bank sent notices of default ("<u>Default Notices</u>") to the FMSI Entities, RAMCO, and Carol Delgado as guarantor, notifying them of their defaults under the FMSI Loan Documents and the RAMCO Loan Documents. True and correct copies of the Default Notices are attached hereto as <u>Exhibit I</u> and incorporated by this reference.

25.    Defaults identified under the Default Notices include, among other defaults, payment defaults and a non-payment default for RAMCO and the FMSI Entities' failure to notify the Bank that they were under investigation by the United States Securities and Exchange Commission in connection with their investor solicitation activities.

**<u>Commencement of Receivership Action by the Bank</u>**

26.    On September 6, 2016, the Bank filed a complaint (the "<u>Bank Complaint</u>") in the Circuit Court of Cook County, Illinois (the "<u>State Court</u>") against RAMCO, the FMSI Entities, and Carol Delgado (the "<u>State Court Proceeding</u>"). A true and correct copy of the Bank Complaint is attached hereto as <u>Exhibit J</u> and incorporated by this reference.

27.     In the Bank Complaint, the Bank asserts that, as of September 2, 2016, the balance due and owing on the FMSI Loan was $8,099,317.02 and the balance due and owing on the RAMCO Loan was $7,039,553.85.

28.     The Bank Complaint also asserts that: (i) on September 1, 2016, RAMCO and the FMSI Entities demanded that the Bank's financial advisors leave their shared premises after such advisors, pursuant to their rights under the FMSI and RAMCO Loan Documents, requested access to certain financial books and records; and (ii) subsequent to delivery of the Default Notices, FMSI and RAMCO admitted to the Bank that they lacked adequate liquidity to continue to operate their businesses as going concerns and to pay their obligations as they became due.

29.     The Bank Complaint asserts claims for breach of the FMSI Loan Documents, the RAMCO Loan Documents, and the Delgado Guaranties and seeks the appointment of a receiver over the assets of RAMCO and the FMSI Entities.

30.     Grounds for appointment of a receiver in the Bank Complaint include that:

- RAMCO and the FMSI Entities submitted "false borrowing-based reports to obtain millions of dollars in loan advances under the Loan Agreements by artificially inflating their borrowing base certificates so as to fraudulently induce the [Bank] to lend to [Plaintiffs] under the revolving credit facilities;"

- RAMCO and the FMSI Entities "hid the existence of . . . prohibited affiliate transactions and misled the [Bank] when the Loans were subsequently amended by falsely representing that they were in full compliance with the Loan Agreements, which the [Bank] relied upon to continue to make advances on the Loans . . . and extend the Loans maturity dates until July 30, 2016."

- RAMCO and the FMSI Entities "divert[ed] the proceeds of the Loans from [RAMCO and the FMSI Entities] to other companies and individuals for the personal gain of [Carol Delgado and certain of her relatives], as well as other officers and professionals" companies.

- RAMCO and the FMSI Entities "refused to disclose and hid from the [Bank] an SEC investigation against the FMSI Entities and have failed to provide

meaningful explanation or visibility as to the grounds for and status of the investigations."

- "The FMSI Entities' auditor abruptly and vocally resigned from its engagement, has revoked its audit for the prior fiscal year, and has refused to complete its audit of the FMSI Entities' financial for FY2015."

- RAMCO and the FMSI Entities "have refused to honor the [Bank's] inspection rights or provide access to [their] books and records."

(Bank Complaint, ¶31.)

31.     On September 12, 2016, the State Court entered an agreed order (the "Receiver Order") appointing Timothy Turek as receiver (the "Receiver") for RAMCO and the FMSI Entities.  A true and correct copy of the Receiver Order is attached hereto as Exhibit K and incorporated by this reference.

32.     Pursuant to Paragraph 12 of the Receiver Order, "Without further order of the Court, Receiver is authorized and instructed to conduct all affairs of the [Debtors] including, without limitation, any and all of the following acts…b) to continue to manage the business operations of [Debtors]…l) to file any lawsuit or other legal action that may be appropriate and necessary in the Receiver's reasonable discretion."  Ex. K at ¶12.

**Events Following Appointment of the Receiver**

33.     Immediately following the appointment of the Receiver as receiver, on or about September 14, 2016, counsel for the Plaintiffs, Paul Nordini of Nordini and Thompson, informed counsel for the Receiver, Bryan Minier of Lathrop & Gage, that the Plaintiffs had entered into "sale agreements" with RAMCO Holdings by which they had transferred all of their assets to RAMCO Holdings, which is a violation of Section 9.4 of the FMSI Loan Agreement and the RAMCO Loan Agreement.  Mr. Nordini also informed Mr. Minier that, in exchange for the transfer of substantially all of their assets, the Plaintiffs had issued "three promissory notes" and that such notes were the Plaintiffs' only remaining assets.  Mr. Minier

verbally requested that the Plaintiffs turn over such promissory notes, along with the sale agreements and any related documents, to the Receiver.

34.     On September 14, 2016, Mr. Minier, following up on his verbal request for the promissory notes and sale agreements, sent Mr. Nordini a request for documents including, without limitation, documents relating to the purported transfer of assets by RAMCO and the FMSI Entities to RAMCO Holdings, documents relating to electronic payments by customers, documents relating to the location of assets, and bank account information.

35.     The Plaintiffs and Mr. Nordini refused to provide the Receiver with any of the requested documentation, including copies of the promissory notes or sale agreements.

36.     On September 22, 2016, RAMCO Holdings filed an Emergency Petition to Intervene in the State Court Proceeding.  A true and correct copy of the Emergency Petition to Intervene is attached hereto as <u>Exhibit L</u> and incorporated herein by reference.  Attached to the Emergency Petition to Intervene were three Receivables Purchase Agreements (defined below) and three corresponding Promissory Notes (defined below), which the Receiver discovered were the "promissory notes" and "sale agreements" Mr. Nordini had referenced a week earlier.

**<u>The Receivables Purchase Agreements and Promissory Notes</u>**

37.     On September 2, 2016, RAMCO and RAMCO Holdings allegedly executed a Receivables Purchase Agreement, transferring all of RAMCO's account receivables to RAMCO Holdings (the "<u>RAMCO Receivables Purchase Agreement</u>").  In consideration for the transfer of the account receivables, RAMCO Holdings executed and delivered an unsecured promissory note to RAMCO for $7,000,000.00 (the "<u>RAMCO Note</u>").

38.     On September 2, 2016, Financial Management Services, Inc. and FMSI Consumer on the one hand and RAMCO Holdings on the other hand allegedly executed a

Receivables Purchase Agreement, transferring all of FMSI Consumer's account receivables to RAMCO Holdings (the "FMSI Consumer Receivables Purchase Agreement").  In consideration for the transfer of the account receivables, RAMCO Holdings executed and delivered an unsecured promissory note to FMSI Consumer for $8,075,000.00 (the "FMSI Consumer Note").

39.     On September 2, 2016, Three Marketiers and RAMCO Holdings allegedly executed a Receivables Purchase Agreement, transferring all of Three Marketiers' account receivables to RAMCO Holdings (the "Three Marketiers Receivables Purchase Agreement"). In consideration for the transfer of the account receivables, RAMCO Holdings executed and delivered an unsecured promissory note to Three Marketiers for $100,000.00 (the "Three Marketiers Note").

40.     Collectively, the RAMCO Receivables Purchase Agreement, the FMSI Consumer Receivables Purchase Agreement, and the Three Marketiers Receivables Purchase Agreement are referred to herein as the "Receivables Purchase Agreements."  Collectively, the RAMCO Note, the FMSI Consumer Note, and the Three Marketiers Note are referred to herein as the "Promissory Notes."

41.     The Receivables Purchase Agreements purport to be agreements for the sale of all account receivables belonging to RAMCO, FMSI Consumer, Financial Management Services, Inc. and Three Marketiers to RAMCO Holdings.

42.     Each of the Receivables Purchase Agreements is signed by Carol Delgado as President and CEO of the selling entity and by Brent Houck as Executive Vice President of RAMCO Holdings as the buying entity. According to documents obtained from the Plaintiffs, Ms. Delgado and Mr. Houck are officers of both RAMCO Holdings and of each of the selling entities.

10

43.     The Promissory Notes each mature and become payable in full on December 30, 2016.

44.     In addition, interest only payments are due under the Promissory Notes with the first interest payment being due on October 30, 2016 and successive interest payments being due on the same numbered day of each month thereafter.

45.     RAMCO Holdings has failed to make any interest payments to the Receiver in accordance with the terms of the Promissory Notes and, therefore, is in breach of its obligations under the Promissory Notes.

46.     The Receivables Purchase Agreements purport to transfer all "Receivables" belonging to RAMCO, FMSI Consumer, and Three Marketiers to RAMCO Holdings, but do not contain a schedule itemizing the Receivables allegedly transferred.

47.     The Receivables appear to be the only source of income and the only material asset of RAMCO, FMSI Consumer, and Three Marketiers.  Thus, the Receivables Purchase Agreements appear to have been a sale of substantially all of these entities' assets to RAMCO Holdings.

48.     On numerous occasions in the State Court Proceeding, counsel for RAMCO, FMSI Consumer, and Three Marketiers has confirmed that the Promissory Notes are the only remaining assets belonging to these entities.

49.     Counsel for RAMCO, FMSI Consumer, and Three Marketiers has also stated that RAMCO Holdings now has complete control and possession over the Receivables.

50.     The total consideration allegedly paid by RAMCO Holdings was the unsecured Promissory Notes, which total on their face $15,175,000.00.

51.    However, borrowing base certificates provided by RAMCO and the FMSI

Entities to the Bank on August 24, 2016 (five days before the alleged transfer) show combined

account receivables (before any ineligible or delinquent account adjustments) of

$19,586,252.00.  A true and correct copy of the borrowing base certificates is attached hereto as

Exhibit M and incorporated by this reference.

52.    Thus, RAMCO, FMSI Consumer, and Three Marketiers purportedly sold all of

their assets to insider RAMCO Holdings at a discount of more than $4.4 million (approximately

a  23% discount).

53.    The Plaintiffs have conceded the validity of the FMSI Loan Documents and

RAMCO Loan Documents, and have conceded that they are indebted to the Bank under such

loan documents - see Paragraph 2 of the attached Motion for Entry of Judgment filed by the

Plaintiffs in the State Court Proceeding.  A true and correct copy of the Motion for Entry of

Judgment is attached to this Complaint as Exhibit N and incorporated by this reference.

54.    Upon information and belief, the Plaintiffs' liabilities to the Bank are at least

$15,100,000.  Each of the FMSI Entities owes approximately $8,100,000 and RAMCO owes

approximately $7,000,000. Upon information and belief, the Plaintiffs have an estimated

$5,791,000 of subordinated debt, $1,917,211 of which is owed by the PMSI Entities and

$3,874,651 which is owed by RAMCO, and $1,950,000 of general unsecured debt, $995,732 of

which is owed by the PMSI Entities and $954,935 which is owed by RAMCO.

55.    RAMCO Holdings did not assume any of RAMCO, FMSI Consumer, and Three

Marketiers' liabilities (to the Bank, to sub-debt holders, to other creditors) through the

Receivables Purchase Agreements or the Promissory Notes, leaving these entities with an

estimated $23million of liabilities and no ability to service those debts as they become due.  At

most, the Plaintiffs' sole assets are three promissory notes with a maximum value of $15,175,000 – the value of the RAMCO Note is at most $7,000,000, and the value of the FMSI Consumer Note and the Three Marketiers Note combined is at most $8,175,000. So, the Plaintiffs liabilities exceed their assets by at least $7,600,000 – $2,830,000 for the FMSI Entities, and $4,830,000 for RAMCO. Consequently, the transfers effectuated by the Receivables Purchase Agreements left RAMCO, FMSI Consumer and Three Marketiers unable to pay their debts as they come due and have rendered the entities insolvent.

56.     Although allegedly executed on September 2, 2016, each of the Receivables Purchase Agreements contains a representation that "Both Originator and Buyer are well informed of pending litigation between Originator and the [Bank]". Receivables Purchase Agreements, § 2.1(e).

57.     The litigation between the Bank and the Plaintiffs, however, was not commenced until September 6, 2016 – four days after the Receivables Purchase Agreements were allegedly executed.

58.     Along with the Plaintiffs' refusal to produce the Receivable Purchase Agreements and the Promissory Notes, notwithstanding their obligation to do so under the Receiver Order and numerous requests from the Receiver, the precognitive representation in the Receivables Purchase Agreements is a clear indicator that the agreements were not actually signed on September 2, 2016.

59.     Additionally, through such representation, RAMCO Holdings admitted (at the time of the Transfers) that it had knowledge of the Bank's claims, negating any argument by RAMCO Holdings that it took the Receivables in good faith.

60.     Although allegedly executed on September 2, 2016, the Receiver was not provided with copies of the Receivables Purchase Agreements or Promissory Notes until September 22, 2016 and then only when RAMCO Holdings attached them to their Emergency Petition to Intervene.

61.     Upon information and belief, the Bank was not informed about and did not consent to the sale of its collateral, the Receivables, to RAMCO Holdings.   Additionally, upon information and belief, the Bank was not made aware of the purported sale until after the Receiver was appointed.   Lastly, upon information and belief, the Bank was also not provided copies of the Receivables Purchase Agreements or Promissory Notes until RAMCO Holdings filed its Emergency Petition to Intervene in the State Court Proceeding.

62.     Accordingly, RAMCO and the FMSI Entities transferred the Receivables to RAMCO Holdings in violation of the FMSI and RAMCO Loan Agreements and also concealed such transfers from the Receiver and the Bank.

**Assets Not Sold to RAMCO Holdings**

63.     The Receivables Purchase Agreements only purport to transfer the Receivables of RAMCO, FMSI Consumer, and Three Marketiers to RAMCO Holdings and counsel for RAMCO and the FMSI Entities contend that the only assets still owned by these entities are the three Promissory Notes.

64.     However, according to its 2014 audited financial statements, FMSI Delaware owned at least $2,767,495.00 worth of non-receivable assets as of December 31, 2014.   Those assets have not been turned over to the Receiver and are believed to be in the possession and control of RAMCO Holdings.

14

65.     According to RAMCO's 2015 audited financial statements, RAMCO owned at least $2,411,281.00 worth of non-receivable assets as of December 31, 2015.  Those assets have not been turned over to the Receiver and are believed to be in the possession and control of RAMCO Holdings.

66.     The Receiver has not been furnished with any agreements which purportedly transfer the assets of FMSI Delaware or FMSI-Financial to RAMCO Holdings or any other entity.

67.     Nonetheless, based upon comments by counsel for RAMCO and the FMSI Entities, the Receiver believes that possession and control of all assets belonging to FMSI Delaware and FMSI-Financial were delivered to RAMCO Holdings.

68.     Despite the Receiver's repeated demand to RAMCO Holdings that it immediately return possession and control of the FMSI Delaware and FMSI-Financial assets to the Receiver, RAMCO Holdings has failed and refused to do so.

**Bankruptcy Filing**

69.     On November 29, 2016 (the "Petition Date"), the Receiver filed bankruptcy petitions under Chapter 11 of the Bankruptcy Code for each of the Plaintiffs.  The petitions were commenced by the Receiver according to the authority granted to him under the Receiver Order.

**FIRST CLAIM FOR RELIEF**
**(Avoidance and Recovery of Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(A), 550)**

70.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71.     The transfer of the RAMCO, FMSI Consumer and Three Marketiers Receivables pursuant to the Receivables Purchase Agreements are referred to herein as the "Transfers."

72.    The Transfers were for an interest of RAMCO, FMSI Consumer and Three Marketiers in property.

73.    The Transfers were made to or for the benefit of RAMCO Holdings.

74.    The Transfers were made less than two years before the Petition Date.

75.    At the time the Transfers were made, RAMCO, FMSI Consumer and Three Marketiers each had one or more creditors within the meaning of 11 U.S.C. § 101(10).

76.    RAMCO, FMSI Consumer and Three Marketiers made the Transfers to or for the benefit of RAMCO Holdings with the actual intent to hinder, delay or defraud an entity to which the Plaintiffs were or became indebted to on or after the date such Transfers were made.

77.    Several badges of fraud exist which support a finding that the Transfers were made with the actual intent to hinder, delay or defraud the Plaintiffs' creditors:

- At the time the Transfers were made, RAMCO Holdings was an insider of RAMCO, FMSI Consumer and Three Marketiers.

- RAMCO, FMSI Consumer and Three Marketiers received less than reasonably equivalent value in exchange for the Transfers.

- RAMCO, FMSI Consumer and Three Marketiers were insolvent or undercapitalized when the Transfers were made.

- The FMSI Loan had matured on July 30, 2016 and FMSI Consumer and Three Marketiers received the Default Notices shortly before the Transfers were made.

- The RAMCO Loan had matured on July 30, 2016 and RAMCO received the Default Notices shortly before the Transfers were made.

- In violation of Section 9.4 of the RAMCO and FMSI Loan Agreements, RAMCO and the FMSI Entities made the Transfers without the knowledge or consent of the Bank.

- The Transfers were hidden from the Bank and the Receiver.

- Upon information and belief, the Transfers may have been made after commencement of the State Court Proceeding. In the alternative, the Transfers

were made after the Default Notices had been sent and the Plaintiffs were aware of likely litigation by the Bank.

78.     RAMCO Holdings was the initial transferee of the Transfers.

79.     RAMCO Holdings was aware that the Plaintiffs had debts beyond the Plaintiffs' ability to pay, including the indebtedness to the Bank, that the Receivables constituted substantially all of RAMCO, FMSI Consumer and Three Marketiers' assets, that RAMCO, FMSI Consumer and Three Marketiers would each be rendered insolvent by the Transfers, and that the Promissory Notes were worth less than the Receivables.  As such, RAMCO Holdings did not take the Receivables for value or in good faith.

80.     The Transfers constitute fraudulent transfers that are voidable pursuant to 11 U.S.C. § 548(a)(1)(A), and the Plaintiffs may recover for the benefit of the Plaintiffs' estates, the amount of the Transfers, to the extent they are avoided, pursuant to 11 U.S.C. § 550.

81.     By reason of the foregoing, Plaintiffs are entitled to a judgment avoiding the Transfers and recovering an amount to be determined at trial, but in no event less than $19,586,252.00, plus pre-judgment and post-judgment interest thereon at the federal statutory rate.

### SECOND CLAIM FOR RELIEF
### (Avoidance and Recovery of Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(B), 550)

82.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

83.     The Transfers were for an interest of RAMCO, FMSI Consumer and Three Marketiers in property.

84.     The Transfers were made to or for the benefit of RAMCO Holdings.

85.     The Transfers were made less than two years before the Petition Date.

86.     RAMCO, FMSI Consumer and Three Marketiers received less than reasonably equivalent value in exchange for the Transfers.

87.     At the time of the Transfers, RAMCO, FMSI Consumer and Three Marketiers:

- Were each insolvent on the date the Transfers were made or became insolvent as a result of such Transfers; or

- Were each engaged in business or in a transaction, or were about to engage in a business or in a transaction, for which any property remaining with the Plaintiffs was unreasonably small capital.

88.     RAMCO Holdings was the initial transferee of the Transfers.

89.     The Transfers constitute fraudulent transfers that are voidable pursuant to 11 U.S.C. § 548(a)(1)(B), and the Plaintiffs may recover for the benefit of the Plaintiffs' estates, the amount of the Transfers, to the extent they are avoided, pursuant to 11 U.S.C. § 550.

90.     By reason of the foregoing, Plaintiffs are entitled to a judgment avoiding the Transfers and recovering an amount to be determined at trial, but in no event less than $19,586,252.00, plus pre-judgment and post-judgment interest thereon at the federal statutory rate.

## THIRD CLAIM FOR RELIEF
### (Money Judgment for Breach of the RAMCO Promissory Note)

91.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

92.     This count is pled in the alternative to Counts I and II.

93.     On or about September 22, 2016, RAMCO Holdings executed and delivered the RAMCO Promissory Note to RAMCO.

94.     Pursuant to the RAMCO Promissory Note, RAMCO Holdings promised to pay RAMCO the principal sum of $7,000,000.00 plus interest at the rate of 3.5% per annum.

95.     The maturity date on the RAMCO Promissory Note is December 30, 2016 and the Note is due in payable in full on that date.

96.     The RAMCO Promissory Note also provides that RAMCO Holdings is obligated to make interest only payments on the Note beginning October 30, 2016 with successive interest payments being due on the same numbered date thereafter until the Note is paid in full.

97.     RAMCO Holdings is in breach of its obligations under the RAMCO Promissory Note by virtue of RAMCO Holdings' failure to make the interest payment due thereunder on October 30, 2016.

98.     As a result of RAMCO Holdings' breach of the RAMCO Promissory Note, RAMCO is entitled, as of November 28, 2016, to a money judgment of at least $39,602.74. RAMCO will be entitled to an additional $20,808.22 on November 30, 2016.  Lastly, the entire amount of at least $7,000,000.00 plus interest at the rate of 3.5% per annum for the total amount of RAMCO Holdings' outstanding liabilities to RAMCO will be due from RAMCO Holdings on December 30, 2016.

## FOURTH CLAIM FOR RELIEF
### (Money Judgment for Breach of the FMSI Consumer Promissory Note)

99.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

100.     This count is pled in the alternative to Counts I and II.

101.     On or about September 22, 2016, RAMCO Holdings executed and delivered the FMSI Consumer Promissory Note to FMSI Consumer.

102.     Pursuant to the FMSI Consumer Promissory Note, RAMCO Holdings promised to pay FMSI Consumer the principal sum of $8,075,000.00 plus interest at the rate of 3.5% per annum.

103.    The maturity date on the FMSI Consumer Promissory Note is December 30, 2016 and the Note is due in payable in full on that date.

104.    The FMSI Consumer Promissory Note also provides that RAMCO Holdings is obligated to make interest only payments on the Note beginning October 30, 2016 with successive interest payments being due on the same numbered date thereafter until the Note is paid in full.

105.    RAMCO Holdings is in breach of its obligations under the FMSI Consumer Promissory Note by virtue of RAMCO Holdings' failure to make the interest payment due thereunder on October 30, 2016.

106.    As a result of RAMCO Holdings' breach of the FMSI Consumer Promissory Note, FMSI Consumer is entitled, as of November 28, 2016, to a money judgment of at least $45,684.59.  FMSI Consumer will be entitled to an additional $24,003.77 on November 30, 2016.  Lastly, the entire amount of at least $8,075,000.00 plus interest at the rate of 3.5% per annum for the total amount of RAMCO Holdings' outstanding liabilities to FMSI Consumer will be due from RAMCO Holdings on December 30, 2016.

## FIFTH CLAIM FOR RELIEF
### (Money Judgment for Breach of the Three Marketiers Promissory Note)

107.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

108.    This count is pled in the alternative to Counts I and II.

109.    On or about September 22, 2016, RAMCO Holdings executed and delivered the Three Marketiers Promissory Note to Three Marketiers.

110.    Pursuant to the Three Marketiers Promissory Note, RAMCO Holdings promised to pay Three Marketiers the principal sum of $100,000.00 plus interest at the rate of 3.5% per annum.

111.    The maturity date on the Three Marketiers Promissory Note is December 30, 2016 and the Note is due in payable in full on that date.

112.    The Three Marketiers Promissory Note also provides that RAMCO Holdings is obligated to make interest only payments on the Note beginning October 30, 2016 with successive interest payments being due on the same numbered date thereafter until the Note is paid in full.

113.    RAMCO Holdings is in breach of its obligations under the Three Marketiers Promissory Note by virtue of RAMCO Holdings' failure to make the interest payment due thereunder on October 30, 2016.

114.    As a result of RAMCO Holdings' breach of the Three Marketiers Promissory Note, RAMCO is entitled, as of November 28, 2016, to a money judgment of at least $565.75 Three Marketiers will be entitled to an additional $297.26 on November 30, 2016.  Lastly, the entire amount of at least $100,00.00 plus interest at the rate of 3.5% per annum for the total amount of RAMCO Holdings' outstanding liabilities to Three Marketiers will be due from RAMCO Holdings on December 30, 2016.

## SIXTH CLAIM FOR RELIEF
### (Turnover of Estate Property– 11 U.S.C. §§ 542)

115.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

116.    Upon information and belief, RAMCO Holdings is in possession and control of non-receivable assets belonging to RAMCO, FMSI Consumer and Three Marketiers.

117.    Upon information and belief, RAMCO Holdings is in possession and control of all assets belonging to debtors FMSI Delaware and FMSI-Financial.

118.    The non-receivable assets of RAMCO, FMSI Consumer and Three Marketiers and the assets of FMSI Delaware and FMSI-Financial are property of the Plaintiffs' bankruptcy estates pursuant to 11 U.S.C. 541(a).

119.    Plaintiffs have made demand upon RAMCO Holdings for the turnover of these assets pursuant to 11 U.S.C. §542, but RAMCO Holdings has failed and refused to turnover such assets to Plaintiff.

120.    By reason of the foregoing, Plaintiff is entitled to an order requiring RAMCO Holdings to turnover such assets to the Plaintiff, a judgment for an amount to be determined at trial, plus pre-judgment and post-judgment interest thereon at the federal statutory rate.

## SEVENTH CLAIM FOR RELIEF
### (Preliminary Injunction)

121.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

122.    Plaintiffs will suffer irreparable harm if RAMCO Holdings is permitted to maintain possession and control of, and allowed to continue using and/or disposing of: (i) the Receivables belonging to RAMCO, FMSI Consumer, and Three Marketiers; (ii) the non-receivable assets belonging to RAMCO, FMSI Consumer, and Three Marketiers; and (iii) the assets of FMSI Delaware and FMSI-Financial.

123.    Plaintiffs have a high probability of success on the merits of their claim for injunctive relief at trial because Plaintiffs will be successful on their claims of fraudulent transfers under 11 U.S.C. § 548(a), and for turnover under 11 U.S.C. §542. Plaintiffs' success

on its claims will void the Transfer or otherwise require RAMCO Holdings to turnover assets in its possession to the Plaintiffs.

124.    Public policy and the balance of equities favor granting injunctive relief in this case because without an injunction, RAMCO Holdings may attempt to sell, convey or otherwise dispose of the assets described above before it can be judicially determined that Plaintiffs are the rightful owners of such assets.

125.    Granting the preliminary injunction will preserve and protect the Receivables and other assets of the Plaintiffs, allow the Plaintiffs to continue operating their businesses as debtors in possession thereby maximizing the value of the Plaintiffs' estates for all creditors, and enjoin RAMCO Holdings from selling, conveying, or otherwise disposing of the assets described above.

126.    The actions of RAMCO Holdings in taking possession and control of the assets described above has created a danger of real, immediate and irreparable harm to Plaintiffs, which harm may be prevented by injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Renewable Asset Management Company, LLC, FMSI of Delaware, Inc., FMSI Consumer Credit Corporation, Three Marketiers, LLC, FMSI-Financial Resources, LLC respectfully request that the Court enter judgment against RAMCO Holdings as follows:

(a)    On Count I, declare that the transfer of the Receivables by RAMCO, FMSI Consumer, and Three Marketiers were fraudulent transfers under 11 U.S.C. § 548(a) and void.

(b)    On Count II, declare that the transfer of the Receivables by RAMCO, FMSI Consumer, and Three Marketiers were fraudulent transfers under 11 U.S.C. § 548(a) and void.

(c)    On Count III, a judgment in favor of RAMCO in the amount of RAMCO Holdings' outstanding liabilities to RAMCO pursuant to the RAMCO Promissory Note.

(d)    On Count IV, a judgment in favor of FMSI Consumer in the amount of RAMCO Holdings' outstanding liabilities to FMSI Consumer pursuant to the FMSI Consumer Promissory Note.

(e)    On Count V, a judgment in favor of Three Marketiers in the amount of RAMCO Holdings' outstanding liabilities to Three Marketiers pursuant to the Three Marketiers Promissory Note.

(f)    On Count VI, declare that the non-receivable assets of RAMCO, FMSI Consumer, and Three Marketiers, as well as the assets of FMSI Delaware and FMSI-Financial, are property of the Plaintiffs' bankruptcy estates pursuant to 11 U.S.C. § 541(a) and order RAMCO Holdings to turnover such assets pursuant to 11 U.S.C. §542.

(g)    On Count VII, issue a preliminary injunction ordering RAMCO Holdings to turn over control of the Receivables to Plaintiffs, turn over any other assets of the Plaintiffs transferred to RAMCO Holdings, all non-receivable assets of RAMCO, FMSI Consumer, and Three Marketiers, all proceeds of the Receivables collected by RAMCO Holdings, and an accounting of all Receivables and proceeds collected by RAMCO Holdings, and enjoining RAMCO Holdings from selling, conveying or otherwise disposing of such assets.

(h)    Granting the Plaintiff such other and further relief as this Court deems just and proper.

Dated:  November 29, 2016

Respectfully submitted,

**LATHROP & GAGE LLP**

By:   _/s/  Bryan E. Minier_
Bryan E. Minier (6275534)
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Ph: (312) 920-3300
Fx: (312) 920-3301
bminier@lathropgage.com

**Attorneys for Debtors**

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, the undersigned declares under penalty of perjury that he is the receiver of Renewable Asset Management Company, LLC, FMSI of Delaware, Inc., FMSI Consumer Credit Corp., Three Marketiers, LLC, FMSI-Financial Resources, LLC, the plaintiffs in this action, that he is authorized to execute this Verification on behalf of the plaintiffs, that he has read the Verified Adversary Complaint to Avoid Fraudulent Transfers Pursuant to 11 U.S.C. Section 548(a) and 550, for Breach of Promissory Notes, for Turnover of Estate Property Pursuant to 11 U.S.C. Section 542, and that the facts stated therein are true and correct to the best of his knowledge.

Timothy Turek, not individually, but as Receiver of Renewable Asset Management Company, LLC ("RAMCO"), FMSI of Delaware, Inc., FMSI Consumer Credit Corp., Three Marketiers, LLC, FMSI-Financial Resources, LLC